### William Williams v. Alice B. Williams.

1. MARRIED WOMEN—*Separate Maintenance.*—A married woman who, without her fault, lives separate and apart from her husband, may have her remedy in equity against her husband for a reasonable support and maintenance, while she so lives separate and apart.    (R. S., Ch. 68, Sec. 22.)

2. SEPARATE MAINTENANCE—*Condonation as a Bar.*—In this case it was pleaded in bar that the wife had previously filed a sworn bill for divorce for similar reasons, which she had dismissed, and resumed marital relations with her husband. The court after discussing the question of condonation, holds the matter pleaded not a sufficient bar.

3. CONDONATION—*Will Not be Implied.*—A condonation will not be implied from the conduct of a party while acting under the restraint of fear or the force of circumstances.

4. MARRIED WOMEN—*When Not Bound to Live with Their Husbands.*—A wife who is not herself in fault, is not bound to live and cohabit with her husband if his conduct is such as to directly endanger her life, peace or health, nor where the husband pursues a persistent, unjustifiable and wrongful course of conduct toward her which will necessarily and inevitably render her life miserable.

**Bill for Separate Maintenance.**—Trial in the Superior Court of Cook County; the Hon. HENRY V. FREEMAN, Judge, presiding. Hearing and decree for complainant. Appeal by defendant. Heard in this court at the October term, 1897. Affirmed. Opinion filed June 13, 1898.

JOSIAH BURNHAM, attorney for appellant.

P. J. O'SHEA, attorney for appellee.

MR. JUSTICE WINDES delivered the opinion of the court. Appellee filed a bill for separate maintenance against appellant October 19, 1896, in the Superior Court of Cook

County, by which she alleged that she was married to appellant September 17, 1893, lived with him as his wife to May 1, 1896, and faithfully performed all duties as a wife; that some time previous to May 1, 1896, she discovered that appellant had syphilis; that she was fully advised by a reputable physician that the disease was incurable, contagious and polluting to her health if she continued to cohabit with appellant; that upon said date she informed appellant that she would not cohabit with him as his wife any longer because of said disease, and thereupon appellant began to be dissatisfied with her and discontented with his home; that appellant deserted his home September 20, 1896, and has remained elsewhere since that date, for which desertion she is in nowise responsible.  The bill prays for a separate maintenance, attorney's fees, alimony *pendente lite*, and for general relief.

Appellant filed a plea in which he set up as a bar to the bill, that on August 7, 1894, appellee filed her sworn bill in the Circuit Court of Cook County against him, in which she made the same allegations and charges as are made in the bill in this case; that the latter bill is still pending and undetermined, and that since said bill was filed in the Circuit Court, appellee has lived with appellant two years and has borne a child by him.  On a hearing of the plea it was held insufficient and overruled, and appellant was ruled to answer.  Later, and on November 20, 1896, appellant answered the bill, by which he averred that appellee, without cause or excuse, on about July 7, 1894, refused to live with him as his wife, and for the next two months lived apart from him without cause; that on several subsequent occasions she deserted him without cause or excuse, and refused to live with him as his wife for weeks and months at a time; denies that she has faithfully discharged all duties as a wife; denies the allegations of the bill as to said disease; denies desertion without cause, and avers that she has been guilty of extreme and repeated cruelty to him since said marriage; that appellee's bill was not filed in good faith, but solely for the purpose of extorting money from him.

A hearing before the chancellor resulted in a decree finding the allegations of the bill to be true, and decreeing a separate maintenance to appellee, and alimony of $520 per year, commencing February 1, 1897, payable in semi-monthly installments at the rate of $10 per week in advance until the further order of the court, and also a solicitor's fee of $100.

Appellant has appealed and contends that his plea should have been sustained; that if appellee ever had any cause for complaint, she had condoned it by living with him after she filed her first bill, and that even if she filed her second bill in good faith, she did not make out a case for any relief; that she did not show she was living apart from appellant without her fault; and that the alimony is excessive.

It appears from the sworn bill of appellee filed in the Circuit Court, on August 7, 1894, that she, prior to July 7, 1894, knew that appellant was afflicted with a loathsome disease; that on or about that date she consulted a physician in regard to it, and was informed by him that she was in constant danger of contracting the disease from her husband, and that if she continued to live and cohabit with him as his wife, it would be at the risk of her health and life, and that her husband could never be permanently cured of the disease. It further appears from the same bill, that from the time she received this information she refused longer to live and cohabit with her husband, and that after July 7, 1894, she lived separately and apart from her husband. The bill prayed a divorce from appellant. By the present bill it appears that from the time of the marriage, September 20, 1893, until May 1, 1896, appellee lived with her husband as his wife, and faithfully performed all duties as a wife; that some time previous to May 1, 1896, she was fully advised by a reputable physician of the terrible nature of appellant's disease, and that it was incurable, whereupon she refused longer to cohabit with him because of the disease, and he thereafter on September 20, 1896, deserted her. Was the first bill a bar to the second bill? We think not.

In 1 Nelson on Divorce and Separation, Sec. 451, the

author says:  " According to a familiar principle of law, a party is not bound by any involuntary act induced by force or fraud.  A condemnation will not be implied from the conduct of a plaintiff while acting under the restraint of fear or the force of circumstances.  The fear of violence may induce the wife to return to her husband, or to remain with him after he has been guilty of a cause for divorce, but no condonation will be implied from such circumstances."  The same author says (Sec. 456) : " It is the policy of the law to encourage reconciliation and reunion where the parties are separated on account of the misconduct of one of them.  The purpose is evidently to reform the offender.  *  *  *  If no reformation is effected by the reunion, and the cruelty is repeated, or the offender commits some other cause for divorce, the injured party. loses no rights by the condonation.  The former offense is revived."  And in Sec. 461 : " The doctrine of condonation is that the offender will reform and will commit no matrimonial offense.  If any offense is committed the injured party is entitled to all the relief she could have obtained if she had not condoned the offense; otherwise, she will suffer for her rightful conduct in condoning the offense."  The statements of this text are reasonable and are supported by respectable authority.  The nature of appellant's offense is such as to be continuing —a constant menace to his wife's health in case of cohabitation.    In her first bill she alleged that she had been informed that her husband could not be permanently cured, and for aught that appears from these pleadings, she may have lived with him subsequently to the filing of that bill, as his wife, because he had been temporarily cured, or she may have done it under the restraint of fear or force of circumstances, for either of which reasons she would be relieved from any implied condonation, by reason of the matters appearing in the pleadings.  Moreover, by the present bill it appears that she was fully advised by a reputable physician of the terrible nature of appellant's disease, and that it was incurable, thereby making it plain that then, for the first time, she fully realized his condition and her situation, and that

she then owed it to herself as well as to possible offspring, to refuse longer to cohabit with her husband.   Whether she had condoned her husband's offense, was a question of fact which the chancellor properly held, in our opinion, should not have been determined upon the bare allegations of her second bill and the plea, and especially was this the wise course, since it appears from the evidence on the hearing that appellant forced appellee to sleep with him.   It is true, he denied that he used any violence toward her, and denied that he insisted upon occupying the same room with her, but the chancellor saw and heard the witnesses, and was therefore far better able to determine which of the two should have been believed on this point.   We are unable to say from the evidence that the finding of the chancellor that she had not condoned his offense, was against the weight of the evidence.   Appellant does not deny that he was afflicted with the disease as charged in the bill, and that he deserted appellee as charged, is, we think, established by a preponderance of the evidence.   It is not claimed that appellee knew of appellant's diseased condition before the marriage, and we are of opinion that when she became fully aware of his condition, when she was advised by a reputable physician, as it appears she was, that the disease was contagious, that it had existed ten years prior to the trial, that she was liable to contract the disease by impregnation—when she found that her child by her husband had constitutional syphilis, when her physician testified he could not tell whether it could be cured or not, she was justified in refusing to cohabit with him, and this fact did not justify him in deserting her.   The chancellor was justified by the evidence in finding that appellee had performed toward appellant all her marital obligations, except that of cohabitation, and this she was justified in refusing because of appellant's disease, and the consequent danger to her health of cohabitation with him.   His desertion was without just cause, and she therefore lived separate and apart from him without her fault.

In Johnson v. Johnson, 125 Ill. 513, in discussing the

statute in regard to separate maintenance, the Supreme Court said : " The fault here meant and contemplated is a voluntary consenting to the separation, or such failure of duty or misconduct on her part as materially contributes to a disruption of the marital relation. * * * But a wife who is not herself in fault is not bound to live and cohabit with her husband, if his conduct is 'such as to directly endanger her life, peace or health, nor where the husband pursues a persistent, unjustifiable and wrongful course of conduct toward her, which will necessarily and inevitably render her life miserable and living as his wife unendurable."

We have been referred by counsel to no case in which the facts are similar to those of the case at bar, nor have we been able, in the time we could give the case, considering our other duties, to find one strictly in point; but we think it is in accord with reason and good morals, as well as the dictates of humanity and the general expression of the Supreme Court in the Johnson case, *supra*, to hold that appellee was under no obligation to submit to a cohabitation with her husband, when by so doing she constantly endangered her health and possibly her life, as well as that of any child that might be born.

The allowance of alimony made by the chancellor was justified by the evidence. It is true that it is about one-half of what appellee admits was his monthly income, but there was other evidence tending to show that appellant had a larger income and other property besides his income.

The decree is affirmed.